Mr. Lee. I believe it's just me, Your Honor. Oh, that, yeah, I guess the way of the argument, right? That's right. That's right. So go ahead. Thank you. Thank you, Your Honor. Good morning, Your Honors, and may it please the court. This court should affirm the decision of the trial court in this case because the appellant, Ningbo Kishin, failed in multiple ways to preserve its argument, and in any event, the arguments that they're making lack merit. Can we focus a bit, and I think this is the reason that we wanted to hear from you, is not so much on the importer who has no entries? Yes, in the sense that the regulation, the relevant regulation 19 CFR 351213 D3 that's cited in the brief, it's a discretionary regulation. It says that... But that's terminating. That's not initiating. My question was about that, but it's a little more complicated because at the time of initiation, commerce does not necessarily know whether companies have entries or don't. What happens is that commerce will issue an initiation notice that says, anyone who wishes to request an administrative review of this order for which we're in the anniversary month, please go ahead and request a review. In a case like this one, the domestic... I'm not sure if that's... It's frequently the case that both the domestic industry and various foreign importers will request a review. Commerce doesn't know at that point whether anyone has shipments, although presumably if someone is requesting a review, they're not requesting a review because they don't have shipments. Did Kishin request review? I believe it did. I'm not 100% sure. What I am 100% sure of is throughout this proceeding, continually up until the very end, frankly up until appeal, Kishin represented that it had shipments. We cited these pages of the record in our brief. It's at page 568, 595, 653 of the They just weren't ultimately able to demonstrate evidence of a shipment that commerce requires in order to give someone a separate rate. Mr. Curlin, the regulation says the secretary may rescind if the secretary concludes there were no entries. Under what Well, I think implicit in your question is an important distinction that we have to make about this case. In this case, the secretary did not make an affirmative conclusion. No, I understand that. I'm just asking the question, under what circumstances would the secretary properly not rescind if the conclusion was that there were no entries? Because the statute is written in discretionary language. Right. I think it would be inappropriate for me to try to speculate when that might come up. I can try to spin circumstances, but I think it's a case-by-case determination depending on the facts. I mean, suppose the secretary said, I conclude based on the record that there were no entries. I'm convinced of that. The record is clear there were no entries. How could he continue the review under those I'm not sure there is a circumstance if the agency made that type of affirmative determination, which is not what it made here. Well, my concern is that under those circumstances, it seems to me a determination not to rescind would be completely arbitrary and inappropriate. It seems to me the regulation, if anything, should say shall rescind if the secretary determines there are no entries. I understand your question, Your Honor. I mean, the regulation as written certainly is discretionary. But it can't be unbridled discretion. There has to be some standard, and I don't see any standard built into that regulation or anything surrounding it. Sure. I think the agency made an affirmative determination that there are no entries. But the problem is I don't see how you could even initiate review if there were no entries. If the request for review said, we'd like review initiated, company X doesn't have any entries, but we think it ought to be included in the review anyway. And based on that, commerce initiated a review, that would be keeping green with you. That's not what happened. Well, the initiation notice, and this is also in our brief, the initiation notice in this case and in every case. And here, I believe it's at page, the initiation notice is 81 Fed Reg, and then it's page 68632. There's also relevant information at 68634. But it says, if you don't have any shipments, please provide a certification in the next 30 days indicating that you don't have any shipments. And of course, that's not what happened here. I guess what we're trying to figure out is how does commerce determine who to subject the review to in the first place? Is it every importer that was subject to the original anti-dumping duty order from the original investigation? Anybody that was swept into that is automatically part of the administrative review? Or does commerce do some kind of, I don't know, initial review to figure out who to identify that should be part of the administrative review? It's based on the requests that are made. So, if no one requests a particular exporter, then that company will not be part of the review. But normally, what will happen is that the domestic industry will come in and say, we'd like you to review all of the exporters of this particular product. And frequently, the exporters themselves will also ask the department, place a request for an administrative review. The presumption was part of the original investigation, right? And was subject to the original order? I don't know the answer to that precise question. But to answer, I think, the thrust of your Honor's question, they had been subject to previous administrative reviews. However, in this review, they were required to file a new separate rate application and not just a You have to effectively identify yourself. It's not literally a new exporter, but you have to go through the full separate rate application and not just certify, hey, I'm the same company you reviewed last time. So that's why they were filing a full separate rate application here. And as part of that separate rate application, commerce requires information about a sale, which it then uses to de facto control by the Chinese government. It essentially uses the information for that sale to say, okay, no one from the Chinese government is setting this price. The money is going back to the company. All the things that a company is representing in the separate rate. So if a company says, we want to be reviewed, we deserve a separate rate, but then at the end of the day, can't provide the In that circumstance, they're not going to get a separate rate and are going to end up with a China-wide rate. The other thing I'll add that I think gets at your Honor's questions is, not at the point of request, but at the beginning of these reviews, commerce, for purposes of determining who it's going to select as the mandatory respondent, as your Honors are familiar, always looks to the largest shippers and exporters. And so it does a run of CBP data to see, well, who does the CBP data indicated at least were identified by importers as having been the source of merchandise. And it doesn't quite use that for these purposes, but it sometimes becomes relevant. And what I would say is here, the information in the CBP data is confidential information. And in addition to that, Appellant's Counsel, even though he's not here, has not ever been admitted to the confidentiality order in the case because he came in late. But I will say, in general terms, that that run of data is inconsistent with the position that this should simply be rescinded with respect to Keyshin. It would be a legal fiction to suggest that because they weren't able to demonstrate that they had a sale that Can I ask you about the consequences of initiating review or continuing review, not rescinding it when there are no entries during the period? As I understand it, the consequence of that would be that the country rate would be applied to that importer. And even though they didn't have any entries during the period, during the next period, they would have to have a cash deposit rate at the countrywide rate rather than the earlier rate determined in the earlier administrative reviews. That's correct? That's accurate. Yes. It gets to a point I was about to make. The position Keyshin is taking here, if you step back from the Faxos case, would be a really, really bad thing. It would open the door up for really bad manipulation. And I try to say that in the most layman's terms. If you're a company that doesn't like things that are dumped a lot during the current period of review or thinks that you have a problem and you'd end up with a countrywide rate, their position would be an invitation to simply say, well, I can't produce any sales. Too bad. Got to give me the last rate that I'm very happy with. Maybe I got a zero in the last review. And so it's the flip side of Your Honor's question. But I guess my response to Your Honor's question is that's not entirely unreasonable. I mean, this court has held in China Manufacturing Associates and other cases going back to SGMA. What's not unreasonable? Applying a cash deposit rate if there were no entries? That wouldn't be reasonable, would it? No. Applying a China rate going forward to a company that hasn't been able to demonstrate that it's separate from the China-wide entry. Even though there are actual entries. Well, if there are no entries, then in some sense, I know, Your Honor, this isn't quite Your Honor's question, but in some sense it's moot. If they're not actually going to apply to anything, then you're not applying whatever it is, a 100% rate to anything that's gone in and out. But Your Honor's question is... I don't know why you're not affecting the cash deposit rate. Right. Which shouldn't happen if they have no entries. Respectfully, Your Honor, I'm respectfully disagreeing in the sense that I don't think it's unreasonable for commerce going forward to apply a China-wide rate to a company that has essentially become part of the China-wide entity because it's unable to demonstrate that it's not The unusual circumstances here is we have an importer that has proclaimed that it does have entries, right? It does have merchandise, but then it just wasn't able to corroborate that with enough evidence. Right. And that also... That's the different situation about maybe why that would be a circumstance where commerce doesn't have to rescind. That's right. That's right. And there's another case on the record that presents analogous circumstances. We cited it in our brief. It's stainless steel and strip in coils from Taiwan. And there, when a company properly raised this issue, unlike Kishin in this case, commerce gave an extended explanation about why in those type of circumstances it wasn't appropriate to rescind a review as opposed to a situation... I'm not understanding what the facts are. There were entries? As far as I know, they weren't able to demonstrate that there was an entry. I don't know offhand whether there were actually entries or not, but it was a situation like this one where the company was coming in and saying, we want a separate rate, and then the evidence it had in connection with the separate rate application was lacking. What if Kishin instead had come in and said, we want a separate rate, and we don't want the countrywide rate, because we didn't import any subject merchandise during the period of review? I think in that circumstance, commerce likely would have rescinded. And then there was no evidence in the record disproving that. Commerce likely would have rescinded. Assuming, first of all, in that circumstance, they would come in and have filed their no shipment certification within 30 days, or even otherwise. Right here, it's not that we applied a deadline and we didn't give them a chance to say no shipments. I mean, up until this appeal, and this has been going on at the administrative levels for six years. What I'm wondering is, does commerce expect an importer like Kishin to somehow provide evidence of a negative, to prove up instead of just proclaiming that they never had any shipments? Only minimally. If they supply the certification, which is the main thing commerce wants, it will then go verify that at the CBP data. The certification they had, no entries. Right. If they supply the no entry certification, then commerce goes and looks in the data. It gives people an opportunity to comment on it, so the domestic industry can wag their finger and say, no, no, no, you're not telling the truth. None of that happened here, because Kishin's position all along was that they had entries. With the concern, you've got to understand this, is that if there were such a certification, if there were such notice of comment, and commerce said, we agree with you, there were no entries during the period, it seems a little strange for commerce to continue the investigation as to that importer and hit them with the country-wide rate, which affects their cash deposit rate. So I completely understand that concern, and there are cases that they've cited and we've cited where commerce did rescind the review under those type of circumstances. When someone claimed there was that Garlick case where they claimed they were a new shipper, but it turned out they weren't making any bona fide sales, there's Allegheny Ludlam. When commerce has made that affirmative determination, it has rescinded. That's not the case here. And I'd be remiss if I didn't at least briefly mention the waiver issue, because they argue on reply that this is like a pure question of law to get around exhaustion, and I guess I have a couple of points there. Well, they made the point in their case brief, right? Well, they haven't said, no, is the short answer. In the case brief before commerce, not that this would save them from exhaustion and waiver anyway, but what they said was because commerce had inadvertently left them out of the preliminary results, they said, hey, if you guys are intending to rescind with respect to us, will you please let us know? It went beyond that. They said, if you conclude that there were no entries, you should rescind. I think that may be what they said in their original brief at the CIT. But none of that gets you around. That doesn't even get you around exhaustion, let alone waiver, right? I mean, this court has very clear precedent. I don't want to belabor the point, because we cited it in our brief, that you have to continue to raise an issue on remand if you were going to pursue it. That's an exhaustion requirement. I mean, I guess I will briefly belabor this. There's Mattel Steel. There's that recent prime time case that this court issued. There's BestPak. But even if you got around that, I mean, here, the regulation is discretionary. And they never raised this point, right? Once they missed the deadline to submit something on remand, they didn't file comments on the draft remand results. Then they came to court months later and said, hey, let us put in this new information, which, by the way, they could have put in from 2016 about other sales that they had. And when the court rejected that, they didn't file any brief contesting Commerce's remand results. And so how did Commerce abuse its discretion? Thank you. Thank you, Mr. Carroll.